FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

OCT 1 4 2025

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ RTKS _____ DEPUTY

Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Jade Riley Burch,

          Plaintiff.

vs.

**ANGIE'S SALON LTD.,** a Nevada Domestic
Limited-Liability Company; and
**ANGELICA MICU a/k/a ANGELICA
TREMILLO,** an individual,

          Defendants.

Case No.:  2:25-cv-01960-RFB-BNW

**COMPLAINT**
***(Federal Civil Rights & Tort Claims)***
**DEMAND FOR JURY TRIAL**

## PRELIMINARY STATEMENT

Plaintiff brings this action to hold Defendants accountable for the reckless chemical injury and ensuing cover-up described below. The case involves clear violations of federal disability law, Nevada safety statutes, and consumer-protection regulations. Plaintiff seeks compensatory, punitive, and injunctive relief to prevent future harm to others.

## INTRODUCTION

This case arises from a professional cosmetologist's reckless and discriminatory conduct that caused severe chemical burns, permanent hair loss, and lasting disfigurement. Despite having actual notice of Plaintiff's seizure disorder and chemical sensitivity, Defendant applied a high-strength bleach, left Plaintiff unattended during processing, and then attempted to conceal the resulting injury. Over the next eight months, Defendants ignored three formal legal notices—including two spoliation warnings—and allowed a certified settlement demand to go unclaimed. Plaintiff brings this action under the Americans with Disabilities Act, Title III, and related Nevada tort and consumer-protection laws to recover for physical and emotional injuries and to compel compliance with disability-access and safety standards.

## NATURE OF THE ACTION

This is a civil action for physical injury, disability discrimination, and deceptive business practices arising from Defendants' negligent and reckless application of chemical products to Plaintiff's scalp, resulting in severe chemical burns, permanent scarring, and emotional distress.

## I. JURISDICTION AND VENUE

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 (ADA, 42 U.S.C. § 12182) and supplemental jurisdiction under 28 U.S.C. § 1367(a) for all related state-law claims.

2. Venue is proper under 28 U.S.C. § 1391(b) because the events occurred in Clark County, Nevada and Defendants reside and do business here.

3. Defendants are subject to personal jurisdiction because they reside and regularly transact business in Nevada and the claims arise from acts committed in Nevada.

## II. PARTIES

4. Plaintiff **Jade Riley Burch** is an individual residing in Las Vegas, Nevada. Plaintiff has a documented neurological disability (seizure disorder).

5. Defendant **Angie's Salon Ltd.** is a Nevada domestic limited-liability company (Entity No. E0003542018-1; NV Business ID NV20181005965), organized as a "Restricted LLC" per Nevada Secretary of State records, active, doing business at 4985 S. Fort Apache Road, Suite 102, Las Vegas, NV 89148.

5A. Angie's Salon Ltd.'s registered agent is Angelica Tremillo, Non-Commercial Registered Agent, 4985 S. Fort Apache Road, Suite 102, Las Vegas, NV 89148.

5B. Plaintiff does not presently know the membership of Angie's Salon Ltd. and will supplement the Certificate of Interested Parties within 14 days of disclosure.

6. Defendant **Angelica Micu, a/k/a Angelica Tremillo**, is an individual who manages and operates Angie's Salon Ltd. She holds Nevada Cosmetology License No. C-34165 (active). The salon holds Nevada Salon License No. S-186642.

6A. Nevada SOS records list "Angelica Micu" as the LLC's manager and "Angelica Tremillo" as the registered agent at the same business address, 4985 S. Fort Apache Rd., Ste. 102, Las Vegas, NV 89148. Public-records results tie both names to the same business phone numbers. Plaintiff alleges the alias designation in good faith pursuant to Rule 9 and will conform the caption once identity is confirmed in discovery.

7. At all relevant times, Micu acted within the scope of her employment as manager and agent of Angie's Salon Ltd. Under the doctrine of respondeat superior, Angie's Salon Ltd. is vicariously liable for Micu's acts and omissions. Both Defendants are jointly and severally liable for all damages arising from this incident.

8. Upon information and belief, Defendant Angelica Micu (a/k/a Tremillo) is the sole member, manager, and alter ego of Angie's Salon Ltd. She exercises total dominion and control over the company, and the company has no separate mind, will, or existence of its own. On information and belief, Micu failed to

observe LLC formalities, commingled personal and company funds, and

caused Angie's Salon Ltd. to pay personal expenses, demonstrating alter-ego

unity of interest. The company was undercapitalized and operated as a mere

instrumentality of Micu. Adherence to the corporate fiction would sanction a

fraud and promote injustice. Therefore, the corporate veil should be pierced,

and Micu and Angie's Salon Ltd. should be held jointly and severally liable

for all damages.

## Misuse of Restricted LLC Form

8A. According to Nevada Secretary of State records (Entity No. E0003542018-1),

Defendant Angie's Salon Ltd. is organized as a "Restricted Limited-Liability

Company" pursuant to NRS 86.125 et seq.

8B. Restricted LLCs under Nevada law are designed primarily to hold passive

investment assets and restrict distributions over time. The statutory structure

contemplates low-activity entities, not high-risk service businesses with direct

public contact and significant tort liability exposure.

8C. On information and belief, Defendants deliberately selected the Restricted LLC

structure to operate a high-risk, public-facing chemical service business while

intentionally limiting the LLC's capitalization and available assets to satisfy

potential claims. This choice of entity form, inappropriate for an active cosmetology

business, demonstrates inadequate capitalization at formation and intent to shield

personal assets from foreseeable business liabilities—both key factors supporting alter-ego liability and punitive damages.

8D. The misuse of this passive-investment corporate structure for an active tort-generating business, combined with the undercapitalization, dominion and control, and failure to observe corporate formalities alleged above, supports piercing the corporate veil.

8E. The deliberate selection of an inappropriate corporate structure designed to limit distributions while simultaneously engaging in high-risk chemical services demonstrates the oppression and malice necessary for punitive damages under NRS 42.005.

### Service

9. Plaintiff will serve Angie's Salon Ltd. pursuant to Fed. R. Civ. P. 4(h)(1)(B) by delivering the summons and complaint to its Non-Commercial Registered Agent, Angelica Tremillo, at 4985 S. Fort Apache Rd., Ste. 102, Las Vegas, NV 89148. Plaintiff will personally serve Angelica Micu a/k/a Angelica Tremillo pursuant to Fed. R. Civ. P. 4(e)(2) at the same business address during business hours. If personal service cannot be immediately effected, the process server will make repeated attempts during regular business hours as needed. If personal service is impracticable, Plaintiff will move for leave to

serve by alternative means under Fed. R. Civ. P. 4(e)(1) and applicable Nevada law.

9A. **Entity Appearance Requirement.** Angie's Salon Ltd. may not appear pro se and must appear through an attorney licensed to practice in this Court. See *Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993); D. Nev. LR IA 11-1. Any document submitted on behalf of the LLC by a non-attorney is ineffective and subject to being stricken upon motion. If the LLC fails to file a proper response by the deadline set in Fed. R. Civ. P. 12(a), Plaintiff will request the Clerk's entry of default under Rule 55(a). If a non-attorney purports to appear for the LLC, Plaintiff will move to strike and request an order requiring the LLC to obtain counsel within 14 days of the Court's order, with default to follow if it fails to comply. This requirement does not apply to Defendant Micu in her individual capacity, who may appear pro se on her own behalf.

---

## III. FACTUAL ALLEGATIONS

**A. Pre-Appointment Disclosures and Reliance on False Advertising**

10. Prior to booking the appointment, Plaintiff discovered Angie's Salon through advertising materials, including website and email marketing, that prominently claimed salon services were safe and non-damaging (see Ex. L).

11. Plaintiff saw and relied on the "no bleach, no damage" messaging when selecting Defendants' services (see Ex. L). The misrepresentation was a producing cause of Plaintiff's injury and economic loss.

**B. The January 31, 2025 Chemical Burn Incident**

12. On January 31, 2025, Plaintiff received a bleach service and a haircut at Angie's Salon Ltd. (see Ex. A).

13. Defendant Micu performed the chemical lightening that caused the injury. A separate stylist, first name unknown, performed only the haircut after the chemical service. He did not mix, apply, tone, or monitor the bleach. His identity will be confirmed through POS user logs and the employee schedule, and he will be called as a witness to Plaintiff being left unattended during processing (see Ex. B). Salon CCTV, POS user logs, service notes, and staffing schedules will confirm role assignments.

14. Before service began, Plaintiff disclosed her seizure disorder and sensitivity to heat and chemicals. Plaintiff explained that she requires a caretaker, Porscha Ryan, who accompanies her to appointments and activities due to her disability. Plaintiff specifically requested reasonable modifications to the standard bleaching procedure, including: (a) continuous monitoring during any chemical processing, (b) use of lower-strength chemicals if possible, and (c) immediate notification if any adverse reactions occurred. Plaintiff explained that these modifications were medically necessary because stress

from chemical burns or adverse reactions could trigger seizure events, and because her disability prevents her from adequately monitoring her own condition during chemical processing.

15. Micu applied, on information and belief, at least a 20-volume peroxide developer directly to Plaintiff's scalp and left Plaintiff unattended while simultaneously working on another client (see Ex. B).

16. During this period, Plaintiff's scalp began to burn severely, causing intense pain and blistering (see Ex. C–D).

17. Micu returned after a prolonged period, rinsed the bleach, and attempted to conceal the injury by applying toner instead of stopping the service and advising immediate medical care. Plaintiff's scalp remained visibly red and inflamed (see Ex. C–D).

18. After returning home and observing the severity of the burns with visible plasma leakage, Plaintiff contacted the salon (see Ex. C–D). Defendants instructed Plaintiff to return to the salon so they could examine the injury. Plaintiff returned to Angie's Salon accompanied by witness Porscha Ryan. Upon visual inspection of Plaintiff's scalp, Defendants observed the bright red discoloration, blistering, and tissue damage. Despite personally observing the chemical burn injury they had caused, Defendants refused to accept responsibility (see Ex. C–D).

19. When Plaintiff informed Defendant Micu of the severity of the burning and injury during this follow-up visit, with Porscha Ryan present as a witness,

Micu attempted to deflect responsibility by stating the burns and hair loss were "probably caused by your hormones" (see Ex. C). This statement was false, medically baseless, and demonstrates both (a) knowledge of Plaintiff's transgender status and ongoing hormone therapy, and (b) an effort to attribute the chemical burns to Plaintiff's gender-affirming medical care rather than to Defendants' negligent chemical application. The injury pattern—localized burns, plasma leakage, and tissue damage in areas of bleach application—is consistent with chemical exposure, not systemic hormone therapy. A similarly situated non-transgender client reporting the same localized chemical-burn pattern would have been treated as an iatrogenic injury rather than blamed on hormones. Defendants' reliance on Plaintiff's gender-affirming care to deflect responsibility evidences disparate treatment and pretext. Critically, Defendants made this false statement after personally observing the injury, demonstrating conscious knowledge of the harm they caused and deliberate choice to blame Plaintiff's medical treatment rather than accept responsibility. Porscha Ryan witnessed this exchange and will testify to Defendants' refusal to accept responsibility and their discriminatory attribution of obvious chemical burns to Plaintiff's hormone therapy. Plaintiff will offer expert testimony from qualified cosmetology professionals and medical experts that: (a) hormone replacement therapy does not cause acute caustic scalp burns or immediate plasma exudation; (b) the injury pattern is consistent solely with chemical burn

exposure; (c) at least 20-volume peroxide applied to a client with disclosed sensitivities and left unattended violates professional standards of care; and (d) the standard of care required continuous monitoring and immediate intervention upon signs of adverse reaction.

## C. Immediate Post-Service Injury and Text Message Communications

20. When Plaintiff arrived home after the service, her scalp was bright red. Porscha Ryan, Plaintiff's caretaker due to her seizure disorder, immediately observed the severe discoloration upon Plaintiff's return home.

21. On January 31, 2025 at 10:03 AM, the same day as the injury, Plaintiff sent a text message to Defendants at phone number +1 (702) 650-5174 stating: "Hi i got my hair bleached there yesterday i woke up with a fire red scalp and burns all over it.. i think i got chemical burned :/ it hurts to touch i have a doctors appointment later today ill have him look at it.. but has this happened before or am i just the lucky one" (see Ex. C). This message provided immediate notice to Defendants of the chemical burn injury.

22. Defendants responded by falsely attributing the injury to Plaintiff's medication, writing: "Hi Dear I believe is become you under so much medication 🗨 " (see Ex. C). This written statement demonstrates Defendants' knowledge of Plaintiff's medical treatment and their attempt to deflect responsibility by blaming Plaintiff's medication rather than their negligent chemical application.

23. When Plaintiff stated "My scalp was clean when i went there" and "There wasnt any medicine on it," Defendants minimized the injury, calling it "just sensitivity on the scalp" and suggesting Plaintiff "Wash your hair and add some conditioner" (see Ex. C). These responses demonstrate Defendants' refusal to acknowledge the severity of the chemical burns and their attempt to minimize the injury as mere "sensitivity" rather than the severe tissue damage it was.

24. That night, Plaintiff discovered plasma leaking from the chemical burns. When Plaintiff ran her hand through her hair, it became considerably wet from plasma exudation. Plaintiff used paper towels to absorb the plasma, which continued to leak from the scalp wounds. The paper towels became saturated, demonstrating the severity of the tissue damage. This plasma leakage is evidence of severe chemical burns penetrating multiple layers of skin and causing significant tissue destruction (see Ex. C–D).

25. Defendants requested photographs, writing "Send a picture please." On January 31, 2025 at 1:25 PM, Plaintiff sent four photographs (IMG_6413.HEIC, IMG_6414.HEIC, IMG_6415.HEIC, IMG_6416.HEIC) documenting the chemical burn injury (see Ex. C). Plaintiff texted: "Chemical burn he is giving me a bunch of medicine." Defendants responded: "Follow up with your doctor sorry for the discomfort. Stop by please" (see Ex. C). Despite receiving photographic evidence of severe chemical burns and confirmation

from Plaintiff's doctor, Defendants continued to minimize the injury as mere "discomfort."

26. Alarmed by the severity of the injury and ongoing plasma leakage, Plaintiff sought urgent medical care the very next morning, February 1, 2025.

27. Porscha Ryan, a close friend of Plaintiff and Plaintiff's caretaker due to Plaintiff's seizure disorder, accompanies Plaintiff to medical appointments and daily activities due to Plaintiff's disability. Ms. Ryan witnessed the bright red discoloration and blistering immediately after the salon service. Later that evening, Ms. Ryan witnessed Plaintiff's discovery of plasma leakage from the chemical burns, including observing Plaintiff's distress when running her hand through her hair caused it to become wet with plasma, and watching Plaintiff use paper towels to absorb the continuous plasma exudation. Ms. Ryan accompanied Plaintiff back to Angie's Salon for the follow-up inspection, where she personally witnessed Defendants examine Plaintiff's injured scalp and then falsely blame the injury on Plaintiff's "hormones" despite the obvious chemical burn pattern. Ms. Ryan will testify to: (a) the severity of the injury she observed immediately after the service; (b) the plasma leakage she witnessed that night; (c) Plaintiff's urgent need for medical care; (d) Defendants' personal observation of the chemical burns during the follow-up visit; (e) Defendants' false and discriminatory statement blaming Plaintiff's hormone therapy; (f)

Defendants' refusal to accept responsibility or offer appropriate care; and (g)

Plaintiff's visible pain and distress throughout this ordeal.

### D. Extensive Medical Treatment and Permanent Injury

28. Plaintiff sought urgent and continuing medical treatment beginning

February 1, 2025.

29. Porscha Ryan accompanied Plaintiff to all medical appointments and

treatments from February 2025 through October 2025, including visits to

Doctor Center at Red Rock, Las Vegas Skin and Cancer, and Dollface

Aesthetics & Wellness for PRP and stem cell therapies (see Ex. E–F, Ex. G).

Ms. Ryan personally witnessed: (a) Plaintiff's ongoing physical pain during

treatments; (b) Plaintiff's emotional distress over the permanent scarring and

hair loss; (c) the progression of the injury despite aggressive medical

intervention; (d) Plaintiff's inability to sleep due to scalp pain and discomfort;

(e) Plaintiff's anxiety and humiliation in public settings due to visible

scarring; and (f) the financial and emotional toll of seeking months of

corrective treatment. Ms. Ryan will provide testimony corroborating the

severity, duration, and impact of Plaintiff's injuries.

30. Beginning February 1, 2025, Plaintiff received immediate care at Doctor

Center at Red Rock, where she was administered a cortisone shot for

inflammation and prescribed multiple medications including specialized

medicated shampoo (see Ex. E). Upon examining the severity of the chemical

burns, Plaintiff's primary care provider immediately instructed her to seek emergency dermatological care. Despite three visits through April 4, 2025, the treatments provided minimal relief and hair would not grow back in the chemically burned areas of Plaintiff's scalp.

31. Following her primary care provider's urgent referral, Plaintiff sought specialized dermatological care at Las Vegas Skin and Cancer beginning February 28, 2025, where she was prescribed topical oil treatments (see Ex. F). While a May 7, 2025 follow-up showed some improvement in inflammation, permanent scarring and hair loss on the scalp had already occurred.

32. On March 7, 2025, Plaintiff filled a prescription for Ketoconazole Topical 2% Shampoo through CreoRx Solutions at a cost of $783.24—a prescription-strength antifungal and anti-inflammatory treatment specifically for severe scalp burns and irritation (see Ex. G-1).

33. Despite all conventional treatments, Plaintiff underwent multiple PRP (platelet-rich plasma) therapy sessions from March through September 2025 (see Ex. G-2). When PRP therapy failed after six months, Plaintiff was forced to escalate to stem cell injection therapy in October 2025 (see Ex. G-3; see also Ex. N).

34. Plaintiff's documented medical expenses total **$4,555.24** to date (see Ex. G-4):

- Doctor Center at Red Rock: $2,420.00
- Las Vegas Skin and Cancer: $832.00

- CreoRx Solutions (Ketoconazole prescription): $783.24

- Dollface Aesthetics & Wellness (PRP therapy): $270.00

- Dollface Aesthetics & Wellness (stem cell injection therapy): $250.00

Future medical treatment, including but not limited to ongoing dermatological care, continued stem cell therapy sessions, potential surgical intervention for scar revision, and lifelong management of permanent hair loss, is estimated to exceed **$75,000**.

35. The progression demonstrates permanent disfigurement requiring lifelong medical management.

36. On February 4, 2025 at 9:56 AM, Plaintiff texted Defendants: "my doctor said the areas that burned may not grow hair again :/." (see Ex. C). This provided Defendants with contemporaneous notice from a medical professional that the chemical burns had caused permanent hair loss. Plaintiff requested Defendants' liability insurance information multiple times on February 3 and February 4, 2025 (see Ex. C). Defendants ignored these requests.

37. On February 4, 2025 at 4:21 PM, Plaintiff sent a final text message stating: "i will begin the process of filing a lawsuit and filing a complaint with the nevada cosmetology board as recommended by my attorney.. please send the information by 11am tomorrow so we can avoid all this.. thanks in advance." (see Ex. C). This message was marked "Delivered," confirming Defendants received it. After this message formally notifying Defendants of impending

legal action, Defendants ceased all communication and never responded

again. This cessation of communication demonstrates consciousness of guilt

and willful evasion of legal responsibility.

**E. Eight-Month Pattern of Evasion and Spoliation**

38. Despite receiving text messages on January 31, 2025 with immediate notice

of injury, photographic evidence of chemical burns, and a February 4, 2025

text explicitly warning of lawsuit and regulatory complaint (see Ex. C),

Defendants ceased all communication after February 4, 2025.

39. On February 27, 2025, Plaintiff's attorney sent Defendants a formal Letter of

Representation via U.S. Mail with explicit spoliation warnings citing *Fire Ins.*

*Exchange v. Zenith Radio Corp.*, 103 Nev. 648, 651 (1987) (see Ex. M-1).

Defendants did not respond.

40. On April 4, 2025, Plaintiff's attorney sent a Second Notice, confirming March

6, 2025 delivery of the first letter and repeating spoliation warnings (see Ex.

M-2). Defendants did not respond.

41. Both letters put Defendants on notice of their duty to preserve all evidence

(see Ex. M-1; Ex. M-2). Despite these warnings, Defendants failed to preserve

or produce any evidence, including but not limited to: (a) security camera

footage from January 31, 2025 showing the service and Plaintiff's visible

distress; (b) appointment records and client intake forms documenting

Plaintiff's disclosed disability; (c) product usage logs showing the strength of

chemicals used; (d) any incident reports or internal communications regarding the injury; (e) before-and-after photographs, if taken; and (f) electronic communications including text messages, emails, and Phorest booking system records related to Plaintiff's appointment and subsequent injury. Notably, Defendants failed to preserve their own text message communications with Plaintiff from January 31 through February 4, 2025, which contained admissions of the chemical burn and Defendants' minimization of the injury.

42. Despite written preservation demands, Defendants failed to preserve ESI reasonably anticipated to be relevant, including POS audit logs, CCTV, and text communications. Salon CCTV, POS audit trails, and scheduling records are, at minimum, within Defendants' possession, custody, or control.

43. On September 29, 2025, Plaintiff's attorney sent a policy-limit settlement demand via USPS Certified Mail (Tracking No. 9407 1119 9699 0561 7851 156). The mail was returned "UNCLAIMED" (see Ex. M-3).

44. This eight-month pattern demonstrates bad faith, willful refusal to engage, and conscious disregard for legal obligations, supporting punitive damages and spoliation sanctions (see Ex. M-1 to M-3; Ex. C). The timeline of evasion includes: (1) January 31-February 4, 2025: receipt of text messages with injury notice, photos, and lawsuit warning; (2) February 4, 2025: complete cessation of communication after final text warning; (3) February 27, 2025: ignoring formal attorney letter; (4) April 4, 2025: ignoring second formal

attorney letter; (5) September 29, 2025: allowing certified settlement demand to go unclaimed.

## F. Ongoing Harm and Professional Impact

45. Plaintiff suffered permanent scarring, hair loss, emotional distress, and loss of enjoyment of life. As a marketing professional known for distinctive pink hair, the permanent loss has impacted her professional image.

46. Plaintiff has suffered additional economic losses including but not limited to: (a) lost wages and reduced earning capacity due to time spent seeking medical treatment; (b) costs for alternative hair styling, wigs, and cosmetic products to conceal the injury; (c) expenses for professional headshots and marketing materials requiring replacement due to visible scarring; and (d) loss of professional opportunities in an image-conscious industry where personal branding is essential to career advancement.

47. Defendant Micu's actions violated NAC 644A.475(2) and NRS 644A.700 (see Ex. I–J).

48. Plaintiff verified both are licensed professionals bound by these standards; licensure confirms applicability (see Ex. I–J).

49. Plaintiff intends to file a formal complaint with the Nevada State Board of Cosmetology alleging violations of NAC 644A.475(2) and NRS 644A.700 (see Ex. I–J).

50. Defendants' acts caused Plaintiff's permanent injuries, $4,555.24 in expenses to date, and future medical costs estimated to exceed $75,000 (see Ex. E–F, Ex. G).

## G. Prior Similar Consumer Complaints and Defendants' Notice

51. Publicly posted reviews reflect prior complaints alleging unsafe chemical services, damage, and unprofessional treatment. (Exhibit O.) These materials are offered to show Defendants' notice, knowledge, willfulness, and lack of mistake (FRE 404(b)(2)), not for truth.

52. Reviewers reported unexpected charges, hair "fried" or "over-processed," scalp pain, and rude responses.

53. These reviews put Defendants on notice of recurring safety issues, yet they failed to retrain staff or adjust policies.

54. Plaintiff alleges these complaints to show notice, knowledge, willfulness, pattern, lack of mistake, and need for injunctive and punitive relief. Discovery will likely reveal additional unreported incidents, formal complaints to regulatory bodies, and internal knowledge of safety deficiencies that Defendants failed to correct despite repeated warnings from consumers.

## IV. CLAIMS FOR RELIEF

**Count 1 — Negligence**

55. Plaintiff incorporates all preceding paragraphs.

56. Defendants owed Plaintiff a duty to exercise reasonable care in providing cosmetology services, including proper chemical selection, application, monitoring, and response to adverse reactions.

57. Defendants breached that duty by: applying excessively strong chemicals; leaving Plaintiff unattended; failing to monitor despite her request; failing to respond to signs of burning; attempting to conceal the injury; failing to warn of severity; failing to provide proper care; and ignoring disclosed seizure disorder.

58. Defendants' conduct rose to the level of gross negligence—a conscious disregard for Plaintiff's safety despite express warnings of her disability and chemical sensitivity—warranting punitive damages under NRS 42.005.

59. As a proximate result, Plaintiff suffered: (a) severe chemical burns with plasma leakage; (b) permanent scarring; (c) substantial hair loss; (d) pain; (e) $4,555.24 in past medical costs and future medical costs estimated to exceed $75,000; (f) emotional distress; (g) loss of enjoyment of life.

60. Medical records note "extremely thin" scalp skin and hair loss, with escalation from topicals to PRP to stem cells.

61. The gross negligence evident in Defendants' conduct supports punitive damages under NRS 42.005.

62. Prior complaints (Exhibit O) evidence conscious disregard and support a finding of gross negligence.

63. Defendants are jointly and severally liable.

## Count 2 — Negligence Per Se (NRS 644A.700; NAC 644A.475)

64. Plaintiff incorporates all preceding paragraphs.

65. Nevada cosmetology law, including NAC 644A.475(2) and NRS 644A.700(1) (and any successor provisions), imposes duties to use reasonable care, appropriate products, and adequate supervision to prevent foreseeable harm during chemical services (see Ex. I–J). NAC 644A.475 and NRS 644A.700 are safety statutes designed to protect salon patrons from foreseeable chemical injury during services; Plaintiff is within the protected class, and the injury suffered is the very harm these provisions are intended to prevent. Defendants violated these duties.

66. Defendants breached these duties by leaving Plaintiff unattended, applying excessive chemicals, and failing to stop during an adverse reaction.

67. These statutory and regulatory violations constitute negligence per se.

68. Plaintiff is within the protected class and suffered the type of harm these regulations prevent.

69. Violations were the proximate cause of Plaintiff's injuries.

70. Prior complaints (Exhibit O) reinforced Defendants' awareness of risks.

71. Defendants are jointly and severally liable.

## Count 3 — Americans with Disabilities Act, Title III (42 U.S.C. § 12182)

72. Plaintiff incorporates all preceding paragraphs.

73. Angie's Salon Ltd. is a place of public accommodation under 42 U.S.C. § 12181(7)(F).

74. Plaintiff has an ADA disability: a seizure disorder substantially limiting major life activities. Plaintiff is transgender and receives hormone therapy, which Defendants knew.

75. Plaintiff disclosed her disability and requested reasonable modifications: continuous monitoring, lower-strength chemicals, and immediate notification of adverse reactions. These requests were medically necessary, as chemical burn stress can trigger seizure events. Plaintiff's disability is sufficiently severe that she requires a full-time caretaker, Porscha Ryan, who accompanies her to appointments and daily activities. Plaintiff's need for continuous monitoring during chemical processing was directly related to her disability and the risk of seizure triggers from stress, pain, or adverse reactions.

76. These modifications were reasonable and would not have fundamentally altered the service or imposed undue burden.

77. Defendants denied these modifications by: applying high-volume peroxide; leaving Plaintiff unattended; and failing to notify or act when reactions occurred. Defendants denied reasonable modifications in violation of 42 U.S.C. § 12182.

78. By failing to provide modifications, Defendants denied Plaintiff full enjoyment of services, violating 42 U.S.C. § 12182(a).

79. As a proximate result of Defendants' failure to accommodate, Plaintiff was denied equal access to the salon's services and suffered the discrimination that Title III was designed to prevent.

80. Plaintiff seeks only injunctive and declaratory relief under Title III, as that is the exclusive remedy available under 42 U.S.C. § 12182. Plaintiff seeks monetary damages for physical injuries, scarring, hair loss, and economic losses under separate state-law claims, including NRS 651.070 and NRS 41.1395, which provide independent grounds for recovery.

81. Plaintiff seeks injunctive relief requiring Defendants to: implement written ADA policies; provide mandatory staff training; establish monitoring protocols; post notice of rights; and maintain records of accommodation requests for five years.

82. **Plaintiff is presently and actively deterred from patronizing Defendants' salon despite its convenience and proximity to her residence.** This deterrence constitutes a concrete, present injury redressable by injunctive relief. See *Langer v. Kiser*, 57 F.4th 1085, 109 (9th Cir. 2023)

(deterrent effect sufficient to establish Article III standing); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008) (same). The deterrent effect arises directly from Defendants' lack of written ADA accommodation policies, absence of staff training on disability modifications, and demonstrated pattern of denying reasonable accommodations—all of which the requested injunctive relief would remedy. Plaintiff has an ongoing need for professional color maintenance services and would utilize this conveniently-located salon but for the well-founded concern that Defendants will again refuse to provide necessary disability accommodations.

82A. **Proximity and Routine:** Plaintiff is a resident of Las Vegas and resides less than five miles from Defendant's salon. Plaintiff frequents the commercial plaza at 4985 S. Fort Apache Road for routine errands, including visiting adjacent retailers in the same plaza at least bi-weekly. The salon's location makes it the most convenient option for Plaintiff's hair care needs.

82B. **Ongoing Need for Service:** As a marketing professional for whom personal appearance is integral to her brand, and as a person with distinctive hair color requiring regular professional maintenance, Plaintiff has a continuous, unmet need for professional color correction and bleaching services that must be addressed every 6-8 weeks.

82C. **Deterrence is Concrete, Present, and Institutional:** Plaintiff is currently and actively deterred from returning to Defendants' salon. This deterrence is based

specifically on institutional failures: (a) Defendants' complete lack of any written ADA accommodation policy or procedure; (b) total absence of staff training on disability modifications and reasonable accommodations; (c) demonstrated refusal to honor accommodation requests when explicitly made; and (d) failure to implement monitoring protocols for clients with disclosed disabilities requiring supervision. **This institutional failure to comply with the ADA creates a present barrier to access** that prevents Plaintiff from utilizing this public accommodation on equal terms with non-disabled patrons. The barrier is not merely fear of repeat physical injury, but rather the absence of systemic policies and training that would ensure ADA compliance in future transactions.

82D. **Injury is Redressable:** The deterrent effect is directly caused by—and therefore fully redressable by—the specific injunctive relief Plaintiff seeks: written accommodation policies, mandatory staff training on disability law and accommodations, monitoring protocols for chemical services on clients with disclosed disabilities, posted notice of accommodation rights, and recordkeeping requirements. These institutional reforms would remove the barrier to access.

82E. **Concrete Plan and Availability of Service:** Professional hair color maintenance is an ongoing need, not a one-time transaction. If the Court orders implementation of written ADA policies, mandatory staff training, monitoring protocols, and accommodation procedures, these institutional changes would remove the deterrent effect and restore Plaintiff's ability to access this conveniently-located

public accommodation. Plaintiff would then be able to utilize Defendants' services for her regular color maintenance needs without facing the same discriminatory denial of reasonable modifications that caused her injury.

83. Prior complaints demonstrate need for written policies and support injunctive relief.

84. Plaintiff seeks only injunctive and declaratory relief under this Count (Title III of the ADA), as monetary damages are not available under this statute. Plaintiff also seeks costs and attorney's fees under 42 U.S.C. § 12205. Plaintiff does not seek monetary damages under Title III.

85. No administrative exhaustion is required for private ADA Title III suits. Plaintiff seeks only injunctive and declaratory relief under Title III and fees/costs under 42 U.S.C. § 12205. Plaintiff reserves the right to retain counsel; any fee award should run to counsel of record if later appeared.

## Count 4 — Public Accommodations Discrimination (NRS 651.070 et seq.)

86. Plaintiff incorporates all preceding paragraphs.

87. Defendants operate a place of public accommodation. Gender identity and expression are protected characteristics under Nevada public accommodations law.

88. After personally inspecting Plaintiff's visibly burned scalp in the follow-up visit witnessed by Porscha Ryan, Micu blamed the injury on Plaintiff's "hormones" rather than the chemical application (see Ex. C–D). A non-transgender client with identical localized chemical burns would not be blamed on "hormones." The remark, made after observing a classic chemical-burn pattern, is pretext for gender-identity discrimination in violation of NRS 651.070 et seq.

89. This violates NRS 651.070 et seq., including without limitation NRS 651.070 and NRS 651.090.

90. Plaintiff seeks all remedies available under Nevada's public accommodations statutes, including damages, injunctive relief, and attorney's fees as authorized by NRS 651.090. Plaintiff reserves the right to retain counsel; any fee award should run to counsel of record if later appeared.

91. Defendants are jointly and severally liable.

## Count 5 — Negligent Hiring, Training, and Supervision

92. Plaintiff incorporates all preceding paragraphs.

93. Angie's Salon Ltd. owed duties to hire competent staff and train them in chemical safety, monitoring, and lawful accommodations.

94. Despite prior notice, including multiple consumer complaints alleging chemical damage and unsafe practices (Exhibit O), Defendant failed to implement corrective training.

95. These failures caused or substantially contributed to Plaintiff's injuries.

96. Plaintiff seeks damages accordingly.

## Count 6 — Deceptive Trade Practices (NRS 598.0915; private right under NRS 41.600)

97. Plaintiff incorporates all preceding paragraphs.

98. Before booking, Plaintiff viewed Defendants' marketing stating "No bleach, no damage, no breakage — color worry-free" on www.angiessalonlv.com and in Phorest email marketing (see Ex. L). Plaintiff relied on these statements.

99. Plaintiff viewed these representations before booking on or about January 28–30, 2025, and they were a substantial factor in her decision to purchase the service.

100.     On September 9, 2025 at 9:57 AM, Defendants sent a Phorest email stating "No bleach, no damage, no breakage — color worry-free" (see Ex. L).

101.     These statements were false. Defendants used at least 20-volume peroxide, caused chemical burns with plasma leakage, permanent scarring, hair loss, and required $4,555.24 in treatment with future medical costs estimated to exceed $75,000.

102.     Defendants made statements knowingly or recklessly, after having knowledge of Plaintiff's injuries.

103.     The September 9, 2025 ad demonstrates continued disregard for consumer safety seven months after injuring Plaintiff.

104.     Plaintiff suffered injuries and economic harm; other consumers remain at risk.

105.     Consumer complaints (Exhibit O) show representations were at least reckless and injunctive relief is necessary.

106.     This claim is brought under NRS 41.600(1) as a consumer aggrieved by practices prohibited by NRS 598.0915, including without limitation false representations and misleading statements (see Ex. L). Defendants engaged in deceptive trade practices prohibited by NRS 598.0915, enforceable via NRS 41.600. Plaintiff seeks actual damages, injunctive relief, attorney's fees, and costs. Plaintiff reserves the right to retain counsel; any fee award should run to counsel of record if later appeared.

107.     Defendants are jointly and severally liable.

## Count 7 — Abuse/Neglect of a Vulnerable Person (NRS 41.1395)

108.     Plaintiff incorporates all preceding paragraphs.

109.     A "vulnerable person" under NRS 41.1395(4)(d) includes a person with a physical or mental impairment that substantially limits one or more major

life activities; Plaintiff's seizure disorder and functional limits meet this definition. Plaintiff has a physical impairment (a seizure disorder) that substantially limits major life activities and renders her incapable of adequately monitoring her own condition during chemical processing or advocating for herself during adverse reactions. Due to the nature and severity of her disability, Plaintiff requires the assistance of a caretaker to safely access and navigate public accommodations, including personal care services like hair salons.

110.    Defendants had actual knowledge of Plaintiff's impairment and her need for assistance, based on Plaintiff's direct disclosures before service began and the presence and active participation of her caretaker, Porscha Ryan.

111.    By undertaking a chemical service that placed Plaintiff in a vulnerable, incapacitated position during processing, Defendants assumed a duty of care to provide the monitoring and safety measures Plaintiff could not provide for herself due to her disability. Their failure to provide the necessary monitoring despite Plaintiff's explicit request, their abandonment of Plaintiff during chemical processing, and their failure to respond to visible adverse reactions constitute the neglect of a vulnerable person under NRS 41.1395(1).

112.    Under NRS 41.1395(1), the Court shall award two times actual damages, plus costs and attorney's fees.

113.    Defendants' neglect was knowing or, at minimum, in reckless disregard of Plaintiff's needs. Plaintiff seeks the mandatory doubling of actual damages under NRS 41.1395(1), plus fees and costs.

114.    Plaintiff's emotional distress damages—including documented medical treatment for anxiety, ongoing distress from permanent disfigurement affecting professional identity, sleep disturbances witnessed by Porscha Ryan, humiliation from visible scarring, avoidance of social and professional situations, diminished self-esteem, and ongoing trauma—are recoverable as actual damages under this Count and will be doubled pursuant to NRS 41.1395(1).

## Count 8 — Breach of Implied Contract and Breach of Implied Warranty of Workmanlike Performance

115.    Plaintiff incorporates all preceding paragraphs.

116.    When Plaintiff booked and paid for hair bleaching services, an implied contract was formed wherein Defendants agreed to perform the service in a safe, competent, and workmanlike manner consistent with professional cosmetology standards.

117.    Defendants impliedly warranted that: (a) services would be performed with reasonable care and skill; (b) appropriate products would be selected for

Plaintiff's disclosed sensitivities; (c) Plaintiff would be monitored during chemical processing; and (d) services would not cause injury or damage.

118.     Defendants breached this implied contract and warranty by: (a) using excessively strong chemicals; (b) abandoning Plaintiff during processing; (c) failing to monitor or respond to adverse reactions; (d) causing severe chemical burns and permanent injury; and (e) delivering services that fell far below professional standards.

119.     As a direct result of this breach, Plaintiff suffered the injuries and damages described throughout this Complaint, including medical expenses, permanent disfigurement, and emotional distress.

120.     Plaintiff seeks damages for breach of contract, including the cost of corrective services, reliance damages, and consequential damages flowing from Defendants' breach.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

**A. Compensatory Damages:** Past medical expenses ($4,555.24), future medical expenses (estimated to exceed $75,000), pain and suffering, emotional distress, permanent scarring, loss of enjoyment of life, and other damages as proven at trial. Plaintiff seeks emotional distress damages as a component of general damages

under Counts 1 (Negligence), 4 (Public Accommodations Discrimination), and 7 (Vulnerable Person Abuse/Neglect).

**B. Punitive Damages:** As authorized by NRS 42.005 for oppression, fraud, and malice. Subject to NRS 42.005 and applicable caps.

**C. Double Damages:** Under NRS 41.1395 for abuse/neglect of vulnerable person, requiring two times actual damages (including all physical injury damages, medical expenses, and emotional distress damages) plus costs and fees.

**D. Consumer Protection Remedies:** Pursuant to NRS 41.600(3)(b) under NRS 598.0915, including damages, injunctive relief, fees; and remedies under NRS 651.090, including attorney's fees.

**E. Injunctive and Declaratory Relief:**

1. A declaratory judgment that Defendants violated the Americans with Disabilities Act, Title III;

2. A declaratory judgment that Defendants violated NRS 651.070 and engaged in unlawful discrimination;

3. Enjoin false advertising claims;

4. Require written ADA policies;

5. Require mandatory staff training on disability accommodations and chemical safety;

6. Require monitoring protocols for all chemical services;

7. Require posting of notice of disability rights and accommodation request procedures;

8. Maintain records of accommodation requests for five years;

9. Enter a preservation order, or grant leave to move on shortened time for such relief, requiring Defendants to preserve, and not alter, delete, or overwrite, CCTV (including but not limited to DVR/CCTV systems and any cloud back-ups), POS user-ID audit logs, booking/service notes, and text/email/Phorest records relating to the January 31, 2025 service.

**F. Costs of Suit:** Costs of suit and statutory fee awards as allowed by law, including 42 U.S.C. § 12205, NRS 41.600(3), NRS 41.1395(1), and NRS 651.090.

**G. Pre-judgment and Post-judgment Interest:** Pre-judgment and post-judgment interest as allowed by Nevada law and 28 U.S.C. § 1961 (including, where applicable, NRS 17.130 and NRS 99.040).

**H. Spoliation Sanctions:** Plaintiff seeks spoliation remedies under Fed. R. Civ. P. 37(e), up to and including adverse-inference instructions upon a showing of intent to deprive. Surveillance systems and digital records constitute ESI. Plaintiff seeks an adverse-inference jury instruction and evidentiary sanctions upon a finding of intent to deprive under Rule 37(e)(2).

**I. Alter Ego and Veil-Piercing Findings:** Enter equitable findings that Angie's Salon Ltd. is the alter ego of Angelica Micu a/k/a Tremillo and that adherence to the

corporate form would sanction fraud or promote injustice; hold Micu jointly and severally liable on all claims.

**J. Other Relief:** Such other relief as the Court deems just and proper.

## VI. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable by a jury.

## VII. CERTIFICATE OF INTERESTED PARTIES

Pursuant to LR 7.1-1, the following persons and entities have a direct, pecuniary interest in the outcome of this case:

- Jade Riley Burch (Plaintiff)
- Angie's Salon Ltd. (Defendant)
- Angelica Micu (Defendant)

Plaintiff is not aware of any parent corporations or publicly held corporations owning 10% or more of any party's stock.

Plaintiff will supplement upon learning the identity of all members of Angie's Salon Ltd. pursuant to LR 7.1-1. Plaintiff is unaware of any other interested entities and will promptly supplement within 14 days of Defendants' disclosures.

## VIII. PUNITIVE DAMAGES JUSTIFICATION

130.    Pursuant to NRS 42.005, Plaintiff seeks punitive damages based on clear and convincing evidence of oppression, fraud, and malice.

131.    **Oppression.** Defendants acted in conscious disregard of Plaintiff's rights and safety despite explicit warnings and requests for monitoring. They applied high-volume peroxide, left Plaintiff unattended, personally observed the resulting chemical burns, then blamed "hormones" rather than accept responsibility.

132.    **Fraud.** Defendants advertised "No bleach, no damage, no breakage — color worry-free" while using at least 20-volume peroxide and, after being placed on notice of injury and preservation obligations, failed to engage and concealed evidence.

133.    **Malice.** The written record shows an eight-month pattern of evasion: (a) January 31 texts reporting burns and photos; (b) February 4 texts relaying the doctor's finding of permanent loss and warning of suit; (c) February 27 and April 4 spoliation letters; and (d) September 29 certified demand returned "UNCLAIMED" (see Ex. C; Ex. M-1 to M-3).

134.    This pattern, combined with the unsafe chemical application to a disclosed vulnerable client and the post-injury pretext blaming "hormones," supports punitive damages under NRS 42.005 (see Ex. L; Ex. M-1 to M-3; Ex. C–D). Punitive damages are sought against both Defendants, jointly and severally, subject to NRS 42.005(1)(b) caps and any applicable exceptions. The discriminatory post-injury remark and blame-shifting constitute "oppression" and "malice" under NRS 42.001(3). Punitive damages are sought against Angie's Salon Ltd. for the acts of its managing agent(s) within the scope of employment and against Micu for her personal, oppressive, and malicious conduct.

**Dated:** October 14, 2025

Respectfully submitted,

*/s/ Jade Riley Burch*

**Jade Riley Burch**

Plaintiff, Pro Se

## NOTE TO CLERK

Exhibits A–O are incorporated by reference into this pleading. Plaintiff files concurrently herewith a **Declaration Authenticating Exhibits** pursuant to Federal Rule of Evidence 901.

## EXHIBITS FILED CONCURRENTLY

Plaintiff submits the following exhibits with this Complaint: **Exhibits B, C, C-2, I, J, K, L, M-3, and O.**

Additional exhibits referenced herein (including A, D, E, F, G, H, M-1, M-2, and N) are maintained in Plaintiff's possession and will be produced in discovery or filed in support of subsequent motions as appropriate.

**END OF COMPLAINT**