Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Jade Riley Burch, | Case No.: |
| Plaintiff. | |
| vs. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| **ANGIE'S SALON LTD.,** a Nevada Domestic Limited-Liability Company; and **ANGELICA MICU a/k/a ANGELICA TREMILLO,** an individual, | |
| Defendants. | |

### INTRODUCTION

Defendants ask this Court to reduce a documented chemical injury, permanent scarring, and systematic denial of disability accommodations to what they characterize as "just a haircut." ECF No. 11 at 3. That framing collapses the moment the Court applies the proper pleading standard. The Complaint alleges a seizure disorder requiring continuous monitoring during chemical services. ¶¶ 4, 14, 74. It alleges Defendants had actual notice of this disability before beginning chemical treatment. ¶ 14. It alleges Defendants applied high-volume peroxide to Plaintiff's scalp and then abandoned her during active chemical processing. ¶ 15. It alleges visible chemical burns formed while Plaintiff sat alone, unmonitored. ¶¶ 16-17. It alleges Defendants personally

observed the resulting tissue damage and plasma leakage, yet blamed the injury on Plaintiff's

hormone therapy rather than their own conduct. ¶¶ 18-19. And it alleges eight months of

deliberate evasion, including ignoring two spoliation warnings and allowing a certified

settlement demand to go unclaimed. ¶¶ 38-44.

These allegations, accepted as true and construed in Plaintiff's favor, state claims for negligence,

negligence per se, ADA discrimination, state public accommodations violations, negligent

training and supervision, deceptive trade practices, vulnerable person abuse, and breach of

warranty. Defendants' motion misapplies the law at nearly every turn.

The motion should be denied.

## TABLE OF CONTENTS

**I.** LEGAL STANDARD

**II.** ARGUMENT A. Punitive Damages Are Adequately Pled

**B.** Negligence Per Se States a Claim

**C.** The ADA Title III Claim Survives

**D.** Nevada Public Accommodations Discrimination Is Properly Pled

**E.** Negligent Training and Supervision States a Claim

**F.** The Deceptive Trade Practices Claim Satisfies Rule 9(b)

**G.** The Vulnerable Person Claim Is Well-Pled

**H.** Breach of Contract and Warranty Claims Are Sufficient

**III.** CONCLUSION

# I. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the strength of the evidence. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint survives dismissal if it alleges sufficient factual matter, accepted as true, to state a plausible claim for relief. *Id.* The Court must draw all reasonable inferences in the plaintiff's favor and may not weigh evidence or resolve factual disputes. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

For pro se plaintiffs, courts must construe pleadings liberally and afford the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). While legal conclusions couched as factual allegations need not be accepted as true, well-pled factual content must be. *Iqbal*, 556 U.S. at 678-79.

Defendants repeatedly violate these standards. They demand evidentiary proof rather than plausibility. They dispute factual allegations that must be taken as true. They apply summary judgment standards to a motion to dismiss. And they ignore the liberal construction required for pro se complaints.

**The motion fails on these grounds alone.**

**Burch v Angie's Salon LTD et al**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## II. ARGUMENT

Defendants challenge Counts 1 through 8. Each is adequately pled under Rule 8 and, where applicable, Rule 9(b), as addressed in turn below.

**A. Punitive Damages Are Adequately Pled**

**1. Defendants Conflate Pleading Standards with Proof Standards**

Defendants argue punitive damages require "clear and convincing evidence" of conscious disregard. ECF No. 11 at 4 (citing *Villagomes v. Laboratory Corp. of America*, 783 F. Supp. 2d 1121 (D. Nev. 2011); *Terrell v. Central Washington Asphalt, Inc.*, 168 F. Supp. 3d 1302 (D. Nev. 2016); *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222 (D. Nev. 2016)). This misstates the applicable standard.

"Clear and convincing evidence" describes the burden of proof *at trial*, not the pleading burden under Rule 12(b)(6). *Villagomes*, *Terrell*, and *Shaw* all addressed summary judgment motions where courts evaluated actual evidence. None involved dismissal at the pleading stage. Defendants cite no authority requiring clear and convincing evidence in a complaint.

At the pleading stage, Plaintiff need only allege facts that, if proven, could support punitive damages. *G.E. Capital Leasing Servs., Inc. v. Murphy*, No. 2:05-cv-1393-RLH-RJJ, 2006 WL 2597681, at *3 (D. Nev. Sept. 8, 2006) (denying motion to strike punitive damages where plaintiff alleged knowledge of risk and deliberate failure to act). Defendants' attempt to import trial standards into Rule 12(b)(6) fails.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## 2. The Complaint Alleges Conscious Disregard

Nevada permits punitive damages where the defendant acted with "oppression, fraud, or malice." NRS 42.005(1). Malice includes "conscious disregard for the rights or safety of others," which requires: (a) subjective awareness of the risk of harm, and (b) willful and deliberate failure to act to avoid that harm. *Bongiovi v. Sullivan*, 122 Nev. 556, 577, 138 P.3d 433, 448 (2006). The Complaint satisfies both prongs.

## Element (a): Subjective Awareness

Defendants knew Plaintiff had a documented seizure disorder. ¶ 14. Defendants knew Plaintiff required continuous monitoring during chemical processing because stress from adverse reactions could trigger seizure events. ¶ 14. Defendants knew high-volume peroxide requires constant supervision to prevent chemical burns. ¶ 15. And Defendants personally observed visible signs of chemical injury forming on Plaintiff's scalp. ¶¶ 16-17.

These allegations establish subjective awareness of probable harm.

## Element (b): Willful and Deliberate Failure to Act

Despite knowing of Plaintiff's disability and the need for monitoring, Defendants left Plaintiff completely unattended during active chemical processing. ¶ 15. Despite observing visible signs of injury, Defendants failed to intervene or provide assistance. ¶ 17. After the injury occurred, Defendants minimized the harm as "just sensitivity" and instructed Plaintiff to "wash your hair and add some conditioner" rather than seek immediate medical care. ¶¶ 22-23. When Plaintiff provided photographic evidence of severe chemical burns confirmed by a physician, Defendants dismissed it as mere "discomfort." ¶ 25.

And critically, Defendants then blamed the injury on Plaintiff's "hormones" despite personally observing classic chemical burn patterns. ¶ 19. This statement, made after direct observation of the harm Defendants caused, demonstrates a deliberate choice to deflect responsibility rather than accept fault.

These facts exceed the threshold for conscious disregard at the pleading stage.

### 3. The Eight-Month Evasion Pattern Supports Punitive Damages

The Complaint alleges systematic evasion spanning eight months. Defendants received text messages on January 31, 2025 reporting the injury with photographic evidence. ¶¶ 21, 25. Defendants received a February 4, 2025 text warning of impending legal action. ¶ 37. After that message, Defendants ceased all communication. ¶ 37.

Defendants then ignored a February 27, 2025 attorney letter with explicit spoliation warnings. ¶ 39. They ignored a second attorney letter on April 4, 2025. ¶ 40. And they allowed a September 29, 2025 certified settlement demand to go unclaimed. ¶ 43.

This pattern demonstrates willful refusal to engage with known legal obligations. Nevada courts recognize post-injury conduct as evidence supporting punitive damages. *See Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 735, 192 P.3d 243, 250 (2008) (upholding punitive damages based in part on defendant's post-harm concealment efforts).

### 4. Defendants' Argument About State of Mind Ignores the Allegations

Defendants claim Plaintiff "made no factual allegations with respect to Ms. Micu's state of mind." ECF No. 11 at 5. This is incorrect.

The Complaint alleges Defendants knew of the seizure disorder (¶ 14), knew monitoring was required (¶ 14), knew the chemicals posed risks (¶ 15), observed visible injury forming (¶¶ 16-

17), and deliberately chose to blame hormones rather than accept responsibility (¶ 19). These are allegations of subjective knowledge and deliberate indifference, not mere negligence. State of mind may be alleged generally. Fed. R. Civ. P. 9(b). The Complaint does so here.

**The punitive damages claim survives.**

**B. Negligence Per Se States a Claim**

**1. Nevada's Three-Part Test Is Satisfied**

Negligence per se applies where: (1) a statute or regulation imposes a specific duty, (2) the plaintiff is within the class of persons the statute protects, and (3) the harm is of the type the statute is designed to prevent. *Ashwood v. Clark Cty.*, 113 Nev. 80, 86, 930 P.2d 740, 743-44 (1997).

All three elements are met.

**(1) Specific Statutory Duty**

NAC 644A.475 governs the safe use of chemical agents in cosmetology. This regulation exists specifically to prevent chemical burns, scalp injuries, and adverse reactions from improper chemical handling. It imposes duties on licensed cosmetologists to assess client conditions, use appropriate products, monitor during chemical processing, and intervene when reactions occur. The statute imposes a specific duty applicable to these facts.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**(2) Protected Class**

NAC 644A.475 protects clients receiving chemical cosmetology services. That is precisely the class to which Plaintiff belongs. Plaintiff is a client who received chemical bleaching services and suffered chemical burns. ¶¶ 12, 15-16.

Defendants argue the statute "does not protect Plaintiff." ECF No. 11 at 5. That position is difficult to reconcile with the plain text and purpose of the statute. Cosmetology safety regulations protect clients from chemical injuries. Plaintiff is a client who suffered chemical injury. The protected class requirement is satisfied.

**(3) Type of Harm the Statute Prevents**

NAC 644A.475 exists to prevent chemical burns, scalp damage, and adverse reactions from unsafe chemical handling. The Complaint alleges chemical burns with plasma leakage (¶¶ 16, 24), permanent scarring (¶ 31), and substantial hair loss (¶¶ 30-31). This is the exact harm the regulation is designed to prevent.

Nevada courts routinely apply negligence per se where safety regulations exist to prevent the type of harm that occurred. *See Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 125 Nev. 818, 824, 221 P.3d 1276, 1280 (2009) (negligence per se applies where regulation designed to prevent the harm that occurred).

All three elements are alleged. The claim survives.

**2. Defendants Mischaracterize the Statutory Basis**

Defendants claim Plaintiff cites NRS 644A.700, which governs cosmetology school licensing. ECF No. 11 at 5. The Complaint cites NAC 644A.475, which governs chemical safety protocols in cosmetology services. ¶ 65. Defendants manufactured a straw man.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

While the Complaint references NRS 644A.700 as additional authority, the negligence per se claim rests on NAC 644A.475, the chemical safety regulation directly applicable to these facts. Defendants provide no authority that NAC 644A.475 fails to create a duty, protect clients, or prevent this type of harm.

**The negligence per se claim is adequately pled.**

**C. The ADA Title III Claim Survives**

**1. The Three Elements Are Alleged**

To state an ADA Title III claim, a plaintiff must allege: (1) a disability, (2) a place of public accommodation, and (3) denial of full and equal services because of the disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). The Complaint alleges all three.

**Element 1: Disability**

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Major life activities expressly include "neurological" functions and "brain" functions. 42 U.S.C. § 12102(2)(B).

The Complaint alleges Plaintiff has a documented neurological disability consisting of a seizure disorder. ¶ 4. It alleges this condition substantially limits major life activities including neurological function, brain function, and central nervous system operation. ¶ 74. It alleges Plaintiff requires a full-time caretaker due to the severity of her disability. ¶¶ 14, 27. And it alleges Plaintiff's impairment necessitates reasonable accommodations during chemical services to avoid seizure triggers. ¶ 14.

These allegations satisfy the ADA's disability definition.

Defendants argue Plaintiff "does not adequately specify" how her impairment affects major life activities. ECF No. 11 at 6. The Complaint explicitly identifies a seizure disorder (¶ 4) that substantially limits neurological function, brain function, and the central nervous system (¶ 74). Defendants' assertion is factually incorrect.

**Element 2: Public Accommodation**

A hair salon is a place of public accommodation under 42 U.S.C. § 12181(7)(F) (listing "barber shop" and "other service establishment"). This element is undisputed.

**Element 3: Denial of Full and Equal Services Because of Disability**

The Complaint alleges Defendants knew of Plaintiff's seizure disorder before providing services. ¶ 14. It alleges Plaintiff requested reasonable safety modifications: continuous monitoring during chemical processing, use of lower-strength chemicals if possible, and immediate notification of adverse reactions. ¶ 14. It alleges these modifications were medically necessary because stress from chemical burns could trigger seizures and because Plaintiff's disability prevents her from adequately monitoring her own condition during chemical processing. ¶ 14.

The Complaint then alleges Defendants denied these modifications by: using high-volume peroxide (¶ 15), leaving Plaintiff completely unattended during active chemical processing (¶ 15), failing to intervene when visible signs of injury appeared (¶¶ 16-17), and dismissing Plaintiff's disability-related safety concerns (¶¶ 22-23).

These allegations establish denial of safe, equal services tied directly to Plaintiff's disability.

**2. Chapman and Whitaker Are Inapplicable**

Defendants rely heavily on *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011), and *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173 (9th Cir. 2021). ECF No. 11 at 6-7. These cases are irrelevant.

*Chapman* and *Whitaker* involve architectural barriers under 42 U.S.C. § 12182(b)(2)(A)(iv). That provision requires removal of physical barriers like ramps, door widths, counter heights, and parking slopes. Both cases involved serial ADA testers conducting "wholesale audits" of building compliance with the ADA Accessibility Guidelines.

This case involves none of that.

This case is brought under 42 U.S.C. § 12182(b)(2)(A)(ii), which prohibits "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." This provision governs individualized service delivery, not building accessibility.

The standing and pleading requirements for reasonable modification claims differ fundamentally from architectural barrier claims. Architectural barrier cases require allegations about specific physical barriers and how they impede access to the premises. *Chapman*, 631 F.3d at 946. Reasonable modification cases require allegations about policies or practices that deny equal services. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004). For reasonable modification claims, the Ninth Circuit requires the plaintiff to allege: (1) a disability, (2) a request for modification, (3) denial of that request, and (4) resulting harm. *Lentini*, 370 F.3d at 847.

The Complaint alleges all four:

- Seizure disorder requiring monitoring (¶¶ 4, 14, 74)

- Request for continuous monitoring during chemical processing (¶ 14)

- Defendants denied the request and left Plaintiff unattended (¶ 15)

- Chemical injury and medical aggravation resulted (¶¶ 16-17, 28-35)

Defendants' reliance on architectural barrier cases is the doctrinal equivalent of relying on products-liability standards in a straightforward contract case: the frameworks do not match.

**3. The Causal Connection Is Explicit**

Defendants claim Plaintiff failed to allege discrimination "because of" her disability. ECF No. 11 at 6. The Complaint alleges:

- Defendants knew of the seizure disorder (¶ 14)

- Defendants knew continuous monitoring was necessary *because of the seizure disorder* (¶ 14)

- Defendants refused to provide monitoring *despite knowing about the seizure disorder* (¶ 15)

- Defendants left Plaintiff unattended *notwithstanding the disclosed disability* (¶ 15)

The causal connection is direct: Defendants denied a disability-related safety accommodation and provided unsafe service as a result. That is discrimination because of disability.

**Burch v Angie's Salon LTD et al**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**4. The "Hormones" Statement Is Additional Evidence, Not the Sole Basis**

Defendants argue the discrimination claim rests solely on a post-service statement. ECF No. 11 at 7. This mischaracterizes the allegations.

The discrimination occurred *during service* through the denial of disability accommodations and unsafe chemical handling. The "hormones" statement serves as direct evidence of discriminatory animus. It demonstrates Defendants' bias and their refusal to acknowledge safety failures.

Alternatively, the statement reveals the true discriminatory reason for Defendants' denial of adequate service and refusal to accept responsibility—an after-the-fact justification that exposes the bias underlying their conduct.

Post-injury statements reflecting discriminatory attitudes are admissible as direct evidence of bias. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). Defendants cannot escape liability by arguing the discriminatory remark came after the discriminatory conduct.

**5. Plaintiff Has Article III Standing**

Defendants do not challenge standing, but prudence requires addressing it.

Plaintiff alleges she is presently and actively deterred from patronizing Defendants' salon despite its proximity and convenience. ¶ 82. The deterrence arises from Defendants' lack of written ADA policies, absence of staff training on disability accommodations, and demonstrated pattern of denying reasonable modifications. ¶¶ 82A-82E.

Deterrent effect establishes Article III standing in ADA cases. *Langer v. Kiser*, 57 F.4th 1085, 1091 (9th Cir. 2023); *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008). Plaintiff resides less than five miles from the salon (¶ 82A), frequents the same commercial plaza bi-weekly (¶ 82A), and has an ongoing need for professional color maintenance services (¶ 82B).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The deterrent effect is concrete, present, and redressable by the requested injunctive relief. ¶¶ 82C-82E.

**Standing is satisfied.**

**The ADA Title III claim survives dismissal.**

Even if the Court were to find any deficiency in the ADA claim (which it should not), it should retain supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367, given the shared factual core and the early posture of the case.

**D. Nevada Public Accommodations Discrimination Is Properly Pled**

NRS 651.070 prohibits denial of full and equal services based on disability and gender identity. The Complaint alleges both.

Defendants provided unsafe chemical services despite Plaintiff's disability disclosure. ¶¶ 14-15. After personally observing the resulting chemical burns, Defendants blamed the injury on Plaintiff's "hormones" rather than their own conduct. ¶ 19. A non-transgender client with identical localized chemical burns would not have been told the injury was caused by hormones. ¶ 19.

The statement is direct evidence of gender identity discrimination. It reveals Defendants' discriminatory mindset and their refusal to accept responsibility.

Defendants argue the statement occurred post-service. ECF No. 11 at 7. But the discrimination occurred *during service* through the denial of disability accommodations and unsafe handling. The post-service statement is evidence of the bias that motivated the conduct.

Nevada courts permit evidence of discriminatory statements made after the challenged conduct. *Shuette v. Beazer Homes Holdings Corp.*, 124 Nev. 534, 554, 189 P.3d 197, 210 (2008) (post-conduct statements relevant to discriminatory intent). Defendants cite no authority requiring that discriminatory remarks occur simultaneously with the discriminatory act.

**The claim is adequately pled.**

**E. Negligent Training and Supervision States a Claim**

Defendants argue this claim fails because Ms. Micu is the salon owner and "cannot negligently train herself." ECF No. 11 at 7-8. This reflects fundamental confusion about Nevada law.

**1. The Claim Is Against the Business Entity**

Angie's Salon Ltd. is a Nevada limited liability company. ¶ 5. Even if Ms. Micu is the sole member, the LLC is a separate legal entity with independent duties.

An LLC can be liable for negligent training and supervision where it fails to implement adequate safety protocols, maintain proper training systems, or correct known deficiencies. *Hall v. SSF, Inc.*, 114 Nev. 1245, 1250, 930 P.2d 94, 98 (1996).

The Complaint does not allege Ms. Micu failed to train herself. It alleges the *business entity* failed to:

- Implement chemical safety protocols required by NAC 644A.475 (¶ 93)

- Establish monitoring procedures for high-risk chemical services (¶ 93)

- Correct deficiencies despite prior consumer complaints (¶ 94)

- Provide disability accommodation training (¶ 93)

  **These are entity-level systemic failures, not allegations of individual self-training.**

**2. Prior Complaints Establish Notice**

The Complaint alleges prior consumer reviews reported unsafe chemical services, over-processed hair, scalp pain, and unprofessional treatment. ¶¶ 51-52. These complaints put Defendants on notice of recurring safety issues. ¶ 53. Despite this notice, Defendants failed to implement corrective measures. ¶ 94.

Nevada recognizes negligent training and supervision claims where an entity knew of risks and failed to implement adequate safeguards. *Chavez v. Barrus*, No. 2:09-cv-00770-KJD-GWF, 2010 WL 9552173, at *2-3 (D. Nev. Mar. 3, 2010).

**The claim survives.**

**F. The Deceptive Trade Practices Claim Satisfies Rule 9(b)**

Rule 9(b) requires fraud claims to identify "the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The Complaint satisfies this standard.

**Who:** Angie's Salon Ltd. and Angelica Micu (¶¶ 5-6)

**What:**

- "No bleach, no damage, no breakage" marketing (¶¶ 10, 98, 100)

- Misrepresentations about chemical service safety (¶ 10)

- False representations about staff qualifications and ability to safely perform the advertised services (¶ 14)

**When:**

- Marketing viewed before booking January 28-30, 2025 (¶ 99)

- Email advertisement sent September 9, 2025 (¶ 100)

**Where:**

- Website www.angiessalonlv.com (¶ 98)

- Phorest email marketing system (¶¶ 98, 100)

**How:**

- Website and email promises of "color worry-free" services (¶¶ 98, 100)

- Verbal assurances during booking about staff training (¶ 14)

- Failure to disclose use of high-volume peroxide or lack of monitoring (¶ 15)

**Reliance:** Plaintiff relied on these representations in selecting Defendants' salon (¶¶ 11, 99)

**Falsity:** Defendants used at least 20-volume peroxide causing severe burns (¶ 101)

**Damages:** Chemical injury, $4,555.24 in medical expenses, estimated $75,000 in future costs (¶ 101)

This exceeds Rule 9(b)'s requirements.

### Defendants Cherry-Pick One Advertisement

Defendants focus on the "blonde without bleach" email about hair extensions. ECF No. 11 at 9.

The NDTPA claim is broader. It encompasses misrepresentations about:

- Chemical safety generally (¶ 10)

- Service quality standards (¶ 10)

- Staff training and qualifications (¶ 14)

- Product handling procedures (¶ 15)

The email is one example of a pattern of misleading marketing, not the sole basis for the claim.

**Defendants' Cases Are Distinguishable**

Defendants cite *Partie v. Ethicon, Inc.*, 609 F. Supp. 3d 1127 (D. Nev. 2022), *Horner v. Mortgage Electronic Registration Systems, Inc.*, 711 F. App'x 817 (9th Cir. 2017), and *Bodenburg v. Apple Inc.*, 146 F.4th 761 (9th Cir. 2025). ECF No. 11 at 8.

These cases involved complaints that failed to identify specific false statements or provide factual support for fraud allegations. *Partie* involved vague allegations about concealed product risks without identifying what was concealed or when. *Horner* involved bare legal conclusions without factual content. *Bodenburg* involved failure to allege what statements were false when made.

Those deficiencies are absent here. The Complaint identifies specific advertisements, quotes the misleading language, alleges when and where Plaintiff viewed them, explains what made them false, and ties them to concrete damages.

**Rule 9(b) is satisfied.**

**Burch v Angie's Salon LTD et al**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**G. The Vulnerable Person Claim Is Well-Pled**

**1. Plaintiff Meets the Statutory Definition**

NRS 41.1395(6) defines "vulnerable person" as someone with "a physical or mental impairment that substantially limits one or more of the major life activities of a person."

Defendants argue this requires an intellectual disability, severe learning disability, or terminal illness. ECF No. 11 at 9. This misreads the statute.

The statute has two parts:

- A general definition (quoted above)

- An illustrative list stating the term "includes, without limitation" certain examples

The phrase "without limitation" makes the examples non-exclusive. Any physical or mental impairment substantially limiting major life activities qualifies.

The statutory language mirrors the ADA's disability definition. 42 U.S.C. § 12102. Nevada courts construe state disability protections consistently with federal disability law where the statutory language is similar.

The Complaint alleges:

- A documented seizure disorder (¶ 4)

- Neurological impairments substantially limiting brain function and central nervous system operation (¶ 74)

- Severity requiring a full-time caretaker (¶¶ 14, 27)

- Medical documentation of these impairments (¶ 4)

**This satisfies NRS 41.1395(6).**

**2. Neglect Is Adequately Alleged**

NRS 41.1395(4) defines "neglect" as failure to provide goods and services necessary to avoid physical harm, mental anguish, or mental illness.

The Complaint alleges:

- Defendants knew of Plaintiff's vulnerability (¶¶ 14, 110)

- Defendants failed to provide necessary safety measures (continuous monitoring) (¶ 15)

- This failure caused physical harm (chemical burns) and mental anguish (¶¶ 16-17, 28-35, 114)

These allegations satisfy the statutory definition.

**3. Providing "Some" Service Does Not Negate Neglect**

Defendants argue "services were affirmatively provided" so neglect is impossible. ECF No. 11 at 10. This confuses providing services with providing *safe* services.

Neglect occurs when a vulnerable person is exposed to unnecessary risk through failure to implement protective measures. Applying chemicals to someone with a seizure disorder requiring monitoring, then abandoning them during processing, is textbook neglect.

NRS 41.1395 exists to protect vulnerable persons from harm caused by inadequate care. The statute would be meaningless if defendants could avoid liability by claiming they provided "some" service, no matter how unsafe.

**The claim survives.**

**H. Breach of Contract and Warranty Claims Are Sufficient**

**1. Implied Contract**

Nevada recognizes implied contracts where the parties' conduct demonstrates mutual assent to an exchange. *May v. Anderson*, 121 Nev. 668, 680, 119 P.3d 1254, 1262 (2005).

The Complaint alleges:

- Defendants offered professional hair services (¶¶ 10-11, 116)

- Plaintiff booked an appointment (¶ 116)

- Both parties understood Plaintiff would receive chemical services (¶ 116)

- Plaintiff paid for services (¶ 36)

These allegations satisfy Rule 8's notice pleading standard. *Twombly*, 550 U.S. at 555.

**2. Implied Warranty of Workmanlike Performance**

Nevada law implies a warranty that services will be performed in a workmanlike manner.

*Calloway v. City of Reno*, 116 Nev. 250, 257, 993 P.2d 1259, 1264 (2000).

The Complaint alleges:

- Defendants agreed to provide professional cosmetology services (¶ 117)

- Such services carry an implied warranty of workmanlike performance (¶ 117)

- Defendants breached by using improper chemicals and failing to monitor (¶ 118)

- Plaintiff suffered harm (¶ 119)

This states a claim under Nevada law.

Burch v Angie's Salon LTD et al
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3. Rule 8 Requires Only Fair Notice

Defendants claim the allegations are "conclusory" without "well-pled facts." ECF No. 11 at 10. Rule 8 requires "a short and plain statement" showing entitlement to relief, not exhaustive factual detail. *Twombly*, 550 U.S. at 555.

The Complaint identifies the parties, the service relationship, the payment, the breach, and the resulting damages. That provides fair notice under *Twombly* and *Iqbal*.

**The claims survive.**

## III. CONCLUSION

Defendants' motion rests on three fundamental errors.

First, they apply the wrong legal standards. They demand evidentiary proof at the pleading stage, import trial burdens into Rule 12(b)(6), and ignore the liberal construction required for pro se complaints.

Second, they cite inapplicable authority. *Chapman* and *Whitaker* are architectural barrier cases with no relevance to reasonable modification claims. Their other authorities involve summary judgment records, not pleadings.

Third, they mischaracterize the allegations. They claim Plaintiff failed to allege facts that appear throughout the 41-page Complaint. They dispute factual allegations that must be accepted as true. They cherry-pick isolated facts while ignoring the full context.

When the well-pled allegations are accepted as true and all reasonable inferences drawn in Plaintiff's favor, every claim satisfies Rule 12(b)(6). The Complaint alleges a documented disability, pre-service disclosure, requested accommodations, denial of those accommodations,

unsafe chemical handling, visible injury, discriminatory statements, permanent harm, and eight months of deliberate evasion.

These allegations state plausible claims for relief.

Even if the Court were to conclude that any cause of action is not presently pled with sufficient detail, dismissal with prejudice would be improper. Under Rule 15(a), leave to amend should be "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend should be freely given in the absence of undue delay, bad faith, or prejudice). To the extent the Court identifies any pleading deficiency, Plaintiff respectfully requests leave to amend to cure it.

**The Motion to Dismiss should be denied in its entirety.**

Respectfully submitted,

/s/ Jade Riley Burch
**Jade Riley Burch**
Plaintiff, Pro Se

**Burch v Angie's Salon LTD et al**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2025, I caused a true and correct copy of the foregoing

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** to be filed with

the Court's CM/ECF system, which will send notice to all counsel of record.

/s/ Jade Riley Burch
Jade Riley Burch